PEERLESS MACHINERY CO. v. UNITED SHOE MACHINERY CO.

(Circuit Court of Appeals, First Circuit. September 12, 1916.)

No. 1150.

PATENTS ⊚══328—VALIDITY AND INFRINGEMENT—FOLDING MACHINE.

The Drake and Folsom patent, No. 727,313, for a folding machine, used for folding shoe uppers, claim 4, relating especially to the feature that the mechanism for operating the trimming knife is "normally inoperative and adapted to be made operative by the operator," as limited by the prior art, held not infringed.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the United Shoe Machinery Company against the Peerless Machinery Company. Decree for complainant, and defendant appeals. Reversed.

Richard P. Elliott and Francis J. V. Dakin, both of Boston, Mass., for appellant.

Frederick P. Fish and Alexander D. Salinger, both of Boston, Mass., for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This appeal involves the question of infringement of letters patent No. 727,313, May 5, 1903, to Drake and Folsom, for folding machine. Claim 4 is as follows:

"4. A folding machine comprising a work support, an edge-bender, work-feeding means co-operating with said bender in turning the edge portion of the work progressively over the body portion, a presser for progressively compressing the turned portion, a movable snipping-knife having a shearing edge projecting over the edge portion of the work, a fixed shear-blade arranged to support the said edge portion, and means for operating the movable knife, said means being normally inoperative and adapted to be made operative by the operator."

The question before us relates to means for operating the movable knife, and particularly to the following expression:

" * * * Said means being normally inoperative and adapted to be made operative by the operator."

The specification states that when the edge to be folded is substantially straight the snipping mechanism (i. e., the knife and its actuating means) is allowed to remain inoperative.

When the edge portion of the work to be folded is curved, it is desirable that the material be slitted to enable the curved edges to be smoothly folded, without wrinkles or bunches. The specification states that the machine is adapted to fold the edge of a piece of material whether said edge be curved or straight.

The relative amount of time that the knives are in use or disuse while the folding operation continues will depend upon the character of the work. If the edge is all straight, the knife is not used; if all curved, the knife will be used throughout the folding operation.

If the edge is partly straight and partly curved, the knife will be brought into operation only at the curved portions.

If the length of straight edge exceeds the length of curved edge, the knife will be in operation during the smaller part of the folding operation. When the material has an edge which is first straight, then curved, and then straight, it is desirable to begin folding with the knife out of operation, to throw it into operation when the curve is reached, and again out of operation when the curve is passed.

The vamps of boots and shoes, referred to by the patentee as "parts of boot and shoe uppers," are material with an edge of this form. By claim 4 now in suit, and especially the words, "normally inoperative and adapted to be made operative by the operator," the complainant seeks to cover that adjustment of the cutting mechanism which is said to be most convenient for use in folding shoe uppers.

If this claim is to cover such adjustment it follows that any maker of a folding machine which may be designed for folding edges either straight or curved or both straight and curved is excluded from what may be the most convenient initial arrangement for a particular class of material in which the curved portion of the edge is comparatively short and is intermediate between two lengths of straight edge.

We are of the opinion that the prior art prevents such a limitation of the use of a combination of folding and cutting mechanism since it discloses means whereby the cutting operation may, at will, be suspended or brought into operation while the folding operation continues. Such machines are described in patent No. 285,823, October 2, 1884, to Lawton; patent No. 294,394, March 4, 1894, to Lufkin; patent No. 713,657, November 18, 1902, to Lufkin. These are so fully described in the opinion of the District Court that repetition is unnecessary. In each is disclosed means for suspending the cutting mechanism whenever it is desired to do so.

It is true that neither of these patents indicates an intention to use the knives only when the edge is curved, and to suspend their use at straight edges, but expressly indicates only the suspension of cutting to pass over seams; but they indicate the general purpose of suspending the cutting operation while the folding operation continues. As their mechanism is adapted to do this at any time desired, it is obvious that no subsequent inventor could patent such mechanism when used to suspend the operation of the cutters at straight portions, or when starting with the cutting suspended on work where the first edge to be folded is straight.

This patent cannot be enlarged in scope, nor the prior art narrowed, upon the assumption that it was an invention to use the cutter only on curves when the edge comprised both straight and curved portions.

As the cutting mechanism was introduced to assist in folding at curves, there could be no broad inventive conception in using it for that purpose only, though there might be room for invention in respect to the means whereby the cutting mechanism could be controlled independently of the folding mechanism.

We cannot make the adoption of the mode of operating so as to cut only on curves the test of infringement by the defendant.

We agree with the view of the District Court that the patentees' advance over Lawton or Lufkin is measurable by the extent to which their mechanism is better adapted to carry out the idea of cutting only on curves, and folding uncut on straight portions.

Before the patent in suit, the operator of a Lufkin machine, by depressing a lever or treadle, was able to discontinue the action of the cutting mechanism without interfering with the other operations. As was said in the opinion of the District Court:

"The important difference * * * lies in the fact that depression and holding down of the Lufkin lever renders and keeps the cutting mechanism of the machine inoperative, permitting it to become again operative only when the lever is released, while depression and holding down of the patentee's lever renders and keeps the cutting mechanism operative until release of the pressure lets it become again inoperative."

We are of the opinion, however, that this difference does not constitute a patentable invention.

As the Lufkin combination includes means whereby, at the will of the operator, the cutting mechanism operates or discontinues operation, it is merely a matter of reversal of order of operations to choose that which is most convenient for particular work. We agree with the expert testimony of the defendant upon this point. It is a mere difference of convenience between two adjustments, one of which is the substantial equivalent of the other.

This greater convenience, moreover, is not an essential feature but merely an accidental feature, in a folding machine designed to fold edges whether straight or curved, and in whatever order they may be presented.

If it be true, as was testified by one witness, that in certain work the knives are out of operation 90 per cent. of the time, and, therefore, that it is easier for the operator to hold down a treadle for 10 per cent. of the time to put the knives in operation than to hold it down for 90 per cent. of the time to hold them out of operation, and if this adjustment, by reason of its superior convenience, amounts to a patentable invention, it would seem to follow that for work which is mostly curved the normally operative position, because of its superior convenience for that kind of work, would, on like grounds, be patentable, and that after the invention of a machine like Lawton's, capable of either adjustment at will, he could be deprived of the right to use either, and thus of the use of his machine.

After the invention of mechanism whereby the operator may, at will, use his cutting mechanism at any time during the folding operation, no subsequent patentee can claim the superior convenience of starting his folding operation before starting his knives as an independent invention. The scope of mechanism capable of adjustment at will cannot be limited by one who merely is first to adjust it for the most convenient use upon particular material. Whether it is best to start with knives in operation or out of operation, whether it is better to throw them from the operative to the inoperative, or from the inoperative to the operative position, how long they are to be maintained in either, and the relative convenience of one over

the other, are all matters which relate to the operation of the mechanism and which will vary according to the work to be done.

The machines of the prior art as well as the machines of the patent in suit, must be regarded as folding machines adapted to various kinds of work, and subject to the most convenient adjustment for any particular variety of work.

The inventor of independently operated cutting mechanism combined with folding mechanism cannot be deprived of the right to adapt the order of operations to any material which is presented for folding. In effect, by claiming cutting means normally inoperative, the patentees seek to exclude other inventors of like combinations from that particular adjustment which the shape of a shoe upper makes appropriate.

The words "normally inoperative" are not sufficiently definite to be descriptive of mechanical elements. It is perhaps more usual to find examples of mechanism which is normally inoperative, and is brought into operation at the will of the operator, than to find examples of mechanism which is operative until thrown out of operation by the operator. In view of Lawton especially, who provides means for adjusting the knives in either position, whether at the outset of the work or during its continuance, there can be no patentability in a claim for these elements set in one adjustment or the other. The means under the control of the operator for either adjustment anticipate any ordinary adjustment by the machine builder in either as a fixed position.

The second distinction is based upon the fact that Lufkin, instead of controlling the knife, removes the shear block out of coaction with the knife, and that the defendant's control of the knife is an advance over Lufkin in this respect. This, however, has no relation to the question which is presented as to the relative convenience of means which are normally inoperative and means which are normally operative; nor is this distinction of any consequence in respect to the Lawton machine, in which the knife is moved, and not the shear block as in Lufkin. If there is any substantial defect in the Lufkin machine owing to the fact that the shear block is governed rather than the knife itself, this is not relevant to the question which is raised by the words, "normally inoperative and adapted to be made operative by the operator."

The substance of the case as to infringement is the contention that the normally inoperative position is better when only a comparatively small amount of slitting is to be done. No evidence has been offered to show the amount of time required for the whole operation of folding an upper, or to show that as a substantial practical matter the holding down of a treadle throughout the greater part of a whole operation rendered the Lufkin machine impractical for use by the ordinary operator, or more difficult than the operation of many treadle controlled machines. It is not enough to say that one machine requires the treadle to be held down longer than the other. From a practical point of view this may amount to nothing, especially if the whole time for the operation is short.

Upon the whole we are of the opinion that in view of the prior art the defendant is at liberty to make its initial adjustment of its cutting device "normally operative" or "normally inoperative," as it sees fit, according to the character of the work for which the folding machine is desired.

The decree of the District Court is reversed, and the case is remanded to the District Court, with instructions to dismiss the bill; and the appellant recovers costs in both courts.